**Exhibit 1**

Eric K. Yaeckel [CSB No. 274608]
yaeckel@sullivanlawgroupapc.com
Ryan T. Kuhn [CSB No. 324538]
ryan@sullivanlawgroupapc.com
**SULLIVAN & YAECKEL LAW GROUP, APC**
2330 Third Avenue
San Diego, California 92101
(619) 702-6760 * (619) 702-6761 FAX

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
10/21/2024 4:40:56 PM

Clerk of the Superior Court
By M. Acevedo          ,Deputy Clerk

Attorneys for Plaintiff DARKO BOGAVAC, an Individual on behalf of himself and all others similarly situated and the general public

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| DARKO BOGAVAC, an Individual on behalf of himself and all others similarly situated and the general public, | CASE NO.: 24CU018405C |
| Plaintiffs, | (Proposed CLASS ACTION) |
| v. | **CLASS ACTION COMPLAINT FOR:** |
| EL POLLO LOCO, INC. a Corporation with its principal place business in California, and DOES 1-100, inclusive, | 1.  **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17500, et seq.**, and |
| Defendants | 2.  **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200, et seq.** |

////

COMES NOW Plaintiff, DARKO BOGAVAC, ("Plaintiff,") an Individual on behalf of himself and all others similarly situated and the general public, and hereby alleges as follows:

Plaintiff brings this action on behalf of himself, and all others similarly situated, against Defendant, EL POLLO LOCO, INC., (hereinafter, "Defendant," or "EPL"). The allegations in this Complaint, stated on information and belief, have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## NATURE OF THE ACTION

1.     Plaintiff files this class action lawsuit on behalf of himself and all similarly situated California citizens, who purchased EPL products in the State of California that are branded, manufactured, distributed, marketed and/or sold by EPL.

2.     This matter involves false, deceptive and/or misleading representations, by EPL, that its packaging/labeling is "recyclable." Plaintiff viewed the subject mis-representations prior to his purchase of said products, and relied on said mis-representations when purchasing said products.

3.     The EPL representations that its packaging/labeling is "recyclable" are false, deceptive and/or misleading, pursuant to the plain and common definitions of the terms.

4.     EPL is, or reasonably should be, aware that its statements are false and/or misleading, as its packaging/labeling does not meet the criteria for statewide recyclability. EPL is aware that the recyclability claims, as used by EPL, are and were false, deceptive and/or misleading when first disseminated by EPL.

## THE PARTIES

5.     Plaintiff is a citizen of the State of California, and has purchased Defendant's products in the County of San Diego regularly (and over a period of more than three years) based on his reliance (prior to purchase) on Defendant's false, deceptive and/or misleading representations, and thereby adversely altered his position in an amount equal to the amount he paid

-1-

for the Defendant's products. Plaintiff and the Proposed Class would not have purchased or paid a premium for the EPL products had they known that the recycling representations were false, deceptive and/or misleading.

6.    Defendant EPL is registered with the Secretary of State as a corporation. Its' Headquarters, and designated "principal place of business," is in the State of California.

7.    The true names and capacities, whether individual, corporate, associate or otherwise of each of the defendants designated herein as a DOE are unknown to Plaintiff at this time, who therefore sue said defendants by fictitious names, and will ask leave of this Court for permission to amend this Complaint to show their names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to, and caused injuries and damages, as alleged herein.

8.    On information and belief, Plaintiff alleges that at all times herein mentioned, each of the Defendants was acting as the agent, servant or employee of the other defendants and that during the times and places of the incident in question, Defendant and each of their agents, servants, and employees became liable to Plaintiff and class members for the reasons described in the complaint herein, and thereby proximately caused Plaintiff to sustain damages as set forth herein.

9.    On information and belief, Plaintiff alleges that Defendants carried out a joint scheme with a common business plan and policies in all respects pertinent hereto and that all acts and omissions herein complained of were performed in knowing cooperation with each other.

10.    On information and belief, Plaintiff alleges that the shareholders, executive officers, managers, and supervisors of the Defendant directed, authorized, ratified and/or participated in the actions, omissions and other conduct that gives rise to the claims asserted herein. Defendant's

officers, directors, and high-level employees caused EPL products to be sold with knowledge or reckless disregard that the statements and representations concerning the EPL products were false and misleading.

11.     Plaintiff is informed and believes, and thereon alleges, that the Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter in that all parties are citizens of, or do business and have Headquarters within, the State of California and the amount in controversy exceeds the statutory minimum limit of this Court. The monetary damages and restitution sought by Plaintiff exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial. Furthermore, there is no federal question at issue as the operative allegations all solely involve state (and not federal) law.

13.     Plaintiff is a citizen of the State of California and subject to the personal jurisdiction of this Superior Court. Further, Plaintiff purchased the majority of the EPL goods within San Diego County. Defendant's Headquarters is in the State of California, and because Defendant conducts business in San Diego County, California and otherwise intentionally avail themselves of the markets in San Diego County, the exercise of jurisdiction by this Court is proper.

## FACTUAL BACKGROUND

14.     Plaintiff has purchased EPL's goods/products (including plastic drink containers, plastic packaging, and plastic bags) regularly (and over a period of more than three years) based on his reliance (prior to purchase) on said false, deceptive and/or misleading representations, and thereby adversely altered his position in an amount equal to the amount he paid for the Defendant's goods/products. Plaintiff and the Proposed Class would not have purchased (or would not have

paid a premium for) the EPL products had they known that the recyclability claims were false, deceptive and/or misleading.

15.     As more specifically set forth below, EPL recycling claims are widely disseminated on the EPL packaging/labeling and/or website, and/or through other written and internet publications.

16.     At all relevant times, Plaintiff believed that he was purchasing EPL goods that were packaged in recyclable materials, based on his reliance on Defendants representations. Plaintiff would not have continued to purchase the products, or would have purchased them but at a lesser price, absent the misleading statements and misrepresentations made by EPL. Please see specific examples of Defendant's false, untrue and misleading representations, below.

### The Recycling Claims

17.     Defendant advertises that many of its products are "recyclable," by and through a variety of ways, including the use of the "chasing arrows" symbol on its labeling/packaging. For example, many of Defendant's "to go," or "takeaway," packaging (including both the exterior packaging and the overlaying "film"), plastic cups, plastic lids, plastic plates, plastic trays, and plastic bags, contain a "chasing arrows" symbol. (Please see **Exhibits A-D)**. Plaintiff's purchases from Defendant (including plastic drink containers, plastic packaging, and plastic bags) contained these represented symbols.

18.     The "chasing arrows symbol" (first introduced in 1970) is statutorily defined to mean than an item is recyclable. Under California law, an item may not be labeled recyclable unless 60 percent of consumers or communities have access to a recycling facility that accepts it. Many of Defendant's "to go," or "takeaway," packaging (including both the exterior packaging and the overlaying "film"), and drink containers are single-use plastics which contain a "chasing arrows symbol."

-4-

19.    Single-use plastics are typically used once, or for a short period of time, and are then thrown away. Single-use plastics include take-out containers, straws, utensils, cups, and lids. Single-use plastics represent the largest plastic waste that escapes, or is released, into the environment and are among the most commonly and consistently picked up on California beaches and riverbanks. Several recent reports have detailed that the plastics industry has been aware since the early 1970s that recycling is not, and never will be, a feasible solution to the plastic waste crisis. Further, single-use plastics were identified as the cause of the plastic waste and pollution crisis. In 2020, Lew Freeman, former vice present of the Society of the Plastics Industry admitted, "There was never an enthusiastic belief that recycling was ultimately going to work in a significant way."

20.    The national recycling rate in the U.S. has never been higher than 9 percent. Less than 10 percent of all plastic ever produced has been recycled. As a result of China's National Sword Policy announced in 2018, the recycling rate has declined.  In 2022, The Department of Energy reported the US national recycling rate had fallen to 5 percent.

21.    In order for a plastic item to be recycled, it first must be accepted by a Material Recovery Facility (MRF). Once collected, the plastic must then be sorted and processed. The plastic is meant to be washed, shredded or grinded, and then melted and extruded into new pellets. The pellets are then sold to manufacturers. A 2022 comprehensive study of California's recycling facilities found that only two types of plastics had a high acceptance rate by MRFs and a high to moderate processing capacity: #1 PET Plastic Bottles and #2 HDPE Plastic Bottles and Jugs. The vast majority (greater than 79%) of MRFs do not accept **any** form of single use plastics. (See Table "Summary: Plastic Item Recyclability in California," and Figure "California: Survey of Single Use Plastic Items Acceptance in Material Recovery Facilities (MRFs)" below). Fast food packaging, such as plastic bags, plastic plates, and plastic lids, were found to be accepted by less than 10 percent of California MRFs. As virgin plastics are cheaper and higher quality, the majority of

1  plastics are not accepted, sorted, or processed by MRFs, as (in part) the end product has little to no

2  market value. Please see below.

3

| SUMMARY: PLASTIC ITEM RECYCLABILITY IN CALIFORNIA | | | | | |
|---|---|---|---|---|---|
| Item | | Collection/Sortation at 25 CA MRFs | | | Recyclable in CA? |
| PET #1 Bottles | 10-11 cents/lb | High: 100% Acceptance | High: 73% Processing | YES | ⊗ |
| HDPE #2 Bottles & Jugs | 28-30 cents/lb Natural 5-7 cents/lb Color | High: 100% Acceptance | Moderate: 42% Processing | YES | ⊗ |
| PET #1 Clamshells | Not Available | Low: 19% Acceptance | No Processing | NO | ⊘ |
| #2-7 Plastic Bags | Negligible: 1 cents/lb | Very Low: 7% MRF Acceptance. Takeback Bins for "Store Dropoff" No Longer Required in CA & Very Few Stores Have Bins | Negligible Processing | NO | ⊘ |
| PP #5 Tubs (Containers with lids) | Negative: -2 to 1 cents/lb Mixed Plastics #3-7 Bale | Moderate: 63% Acceptance as Part of Mixed Plastics #3-7 Bale | Negligible Processing | NO | ⊘ |
| Polystyrene #6 Foam Food Service Packaging | Not Available | Very Low: 9% Acceptance | No Processing | NO | ⊘ |
| Plastic Cups (typically PP#5 & PS#6) | Negative: -2 to 1 cents/lb Mixed Plastics #3-7 Bale | Low: 13% Acceptance | Negligible Processing | NO | ⊘ |
| Plastic Plates (typically PP#5 & PS#6) | Negative: -2 to 1 cents/lb Mixed Plastics #3-7 Bale | Very Low: 7% Acceptance | No Processing | NO | ⊘ |

| Plastic Trays & Bowls (typically PP#5 & PS#6) | Negative: -2 to 1 cents/lb Mixed Plastics #3-7 Bale | Low: 21% Acceptance | Negligible Processing | NO | ⊘ |
|---|---|---|---|---|---|
| Plastic Cutlery, Straws & Stirrers (typically PP#5 & PS#6) | Negative: -2 to 1 cents/lb Mixed Plastics #3-7 Bale | Negligible: 4% Acceptance | No Processing | NO | ⊘ |
| Plastic Food & Mailing Pouches, Wraps, Films (typically PE #2, #4 or PP#5) | Negligible: 1 cents/lb | No MRF Acceptance. Takeback Bins for "Store Dropoff" No Longer Required in CA & Very Few Stores Have Bins | No Processing | NO | ⊘ |
| Plastic Coffee Pods (typically PP#5 & PS #6) | Negative: -2 to 1 cents/lb Mixed Plastics #3-7 Bale | No Acceptance | No Processing | NO | ⊘ |

1

2

3

4

5

6

7

8

9

10

11

12



13

14    22.    Studies in 2020 and 2022 have confirmed that only #1 PET Plastic Bottles and #2

15    HDPE Plastic Bottles and Jugs are accepted by MRFs, and are subsequently sorted and processed

16    throughout the U.S. Single-use plastics are rarely accepted by recycling facilities and are not

17    recyclable. In 2022, Greenpeace reported that less than 10 percent of the U.S. population had

18

19

20



21

22

23

24

25

26

27

28

-7-

access to MRF's that recycle fast food packaging items. (See Figure: 2022 US Population Access to Recycling Fast Food Packaging Items" above.)

23.    As a food service industry packaging its products in plastic packaging, EPL has known, or should have known, that its plastic products are not, and never will be, recyclable. Yet EPL falsely claims that their single-use plastic packaging is recyclable. Worse, EPL engages in marketing campaigns designed to encourage the consumption of EPL's plastic products by falsely reassuring consumers that recycling is an effective solution. EPL began marketing plastic PP #5 as a more recyclable alternative to styrofoam (plastic resin #6). In 2021, EPL announced their new "eco-conscious packaging system." EPL claimed, "These new containers will remove 1.9 million cubic feet of Styrofoam — the equivalent of 21 Olympic-size swimming pools — from the national waste stream annually, and all clear El Pollo Loco lids can be recycled just like PET bottles." However, as referenced herein, neither plastic #5 or #6 are recyclable. Worse, EPL claims that "all clear El Pollo lids can be recycled just like PET bottles." This is false and/or misleading, because PET bottles are accepted by 100% of California Material Recycling Facilties (MRFs), yet only 8% of California MRFs accept plastic lids. (See Figure "California: Survey of Single Use Plastic Items Acceptance in Material Recovery Facilties (MRFs)" above). Further, while California has the capacity to process PET plastic bottles and HDPE bottles, there is no or negligible processing capacity for another other type of plastic, including plastic resin #5. Finally, there is no viable market for any plastic product other than PET bottles and HDPE bottles and jugs.

24.    The EPF "recycling" representations (including the use of the "chasing arrows" symbol) are therefore false, deceptive and/or misleading. Many of the products are not actually recyclable in San Diego County, or any other county in California. Further, even where some of the products may (on occasion) be recycled, they are not *consistently* recyclable. Defendant packages their products in a plastic bag commonly-identified as "#2 HDPE" plastic. (See **Exhibit**

**D**). Plastic films and bags of any resin code, including #2 HDPE, are not commonly recycled in California, or anywhere else. (See Figure: 2022 US Population Access to Recycling Fast Food Packaging Items" and Figure "California: Survey of Single Use Plastic Items Acceptance in Material Recovery Facilities (MRFs)" above.) In fact, such plastics are rejected by many California counties and Recycling facilities, including San Diego County. Flexible plastic bags, film, wrap, and pouches are a top form of contamination in curbside recycling bins. These materials are not widely accepted in curbside bins in California, as they clog machinery at Material Recovery Facilities (MRFs) and other plastic waste processors. (Please see **Exhibit H**).

25.    Separately, Defendant packages several of their food items in take-out containers that are labeled with the chasing arrows symbol and #5 plastic resin code. The bottom of these containers are solid black in color. (Please ee **Exhibit B**). Plastic #5 is only very rarely recycled in California. While #5 Plastics may be accepted in *some* curbside recycling programs, they are not commonly sorted, sold, or recycled as there is no market demand for #5 plastics and there are no facilities in California that can process plastic resins #3 through #7. Further, black plastic is very difficult to recycle, as optical sorters cannot detect black items and therefore cannot easily sort them. Additionally, black plastic does not melt well with other plastics. Many cities and counties therefore instruct residents to place black plastics in the garbage. (Please see **Exhibit E**). Direct Pack, Inc., EPL's partner for "sustainable packaging," (Please see **Exhibit F**), has admitted that black plastic is not recovered from the waste stream, and is therefore not recyclable. (Please see **Exhibit G**).

26.    California law requires that, in order for a plastic to be recyclable, there must be market demand and it must maintain value. Under California law, "[i]t is deceptive to misrepresent, directly or by implication, that a product or packaging is recyclable. A product of package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the

waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." Defendant's representations are false, deceptive and/or misleading, as there is no current established recycling program for reuse or use in manufacturing or assembling another item.

27.    When consumers place these plastics products in their curbside recycling bin, it is highly unlikely that any of EPL plastic packaging will actually be recycled by anyone, or any Recycling facility.  There is no economic value for recycled plastics, as virgin plastics are cheaper and of higher quality.  Recycling plastic is costly, difficult, and time consuming. Further, the use of recycled plastics is limited, as the recycling process introduces new toxins into the plastic. Recycled plastic cannot be recycled into food-safe products, and numerous studies have found high levels of toxic flame retardants, dioxins, and other harmful chemicals in products made with recycled plastics and/or recycled pellets. As a result, the majority of plastics are not recycled, and therefore are either sent to a landfill, or dumped into California's landscapes and waterways. In 2022 alone, it is estimated that between 121,324 and 179,756 tons of plastic waste was leaked into the land and ocean in California. Plastic waste that is dumped at landfills contributes to plastic pollution of the environment. As plastic waste degrades in landfills, micro-plastics are released into the surrounding environment, including the air, soil, groundwater, and surface water. Thus, the EPL representations are false, deceptive and/or misleading.

## PRIVATE ATTORNEYS GENERAL ALLEGATIONS

28.    Plaintiff asserts claims on behalf of class members pursuant to California Business & Professions Code § 17200, et seq. The purpose of such claims is to obtain injunctive orders regarding the false labeling, deceptive marketing and consistent pattern and practice of falsely promoting natural claims and the disgorgement of all profits and/or restoration of monies wrongfully obtained through the Defendant's pattern of unfair and deceptive business practices as

alleged herein. This private attorneys general action is necessary and appropriate because Defendant has engaged in wrongful acts described herein as part of the regular practice of its business.

## **CLASS ACTION ALLEGATIONS**

29.     Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated pursuant to California law.

30.     Plaintiff seeks to represent a Class, or Classes, to be identified within a future Motion for Class Certification. Excluded from the Class will be EPL, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well all past and present employees, officers and directors of EPL. Plaintiff reserves the right to expand, limit, modify, or amend his class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

31.     The Class is made up of thousands of persons throughout California, the joinder of whom is impracticable, and the disposition of their claims in a Class Action will benefit the parties and the Court. The Class is sufficiently numerous because, based on information and belief, thousands to hundreds of thousands of units of the EPL Products have been sold in the State of California during the time period from October, 2020, through the present (the "Class Period").

32.     There is a well-defined community of interest in this litigation and the Class is easily ascertainable:

a.     Numerosity: The members of the Classes are so numerous that any form of joinder of all members would be unfeasible and impractical. On information and belief, Plaintiff believes the size of the Classes exceeds One Hundred Thousand (100,000) members.

-11-

b.  <u>Typicality</u>: Plaintiff is qualified to and will fairly and adequately protects the interests of each member of the Classes with whom he has a well-defined community of interest and the claims (or defenses, if any), are typical of all members of the Classes.

c.  <u>Adequacy</u>: Plaintiff does not have a conflict with the Classes and is qualified to and will fairly and adequately protect the interests of each member of the Classes with whom he has a well- defined community of interest and typicality of claims. Plaintiff acknowledges that he has an obligation to the Court to make known any relationship, conflict, or difference with any putative class member. Plaintiff's attorneys and proposed class counsel are well versed in the rules governing class action and complex litigation regarding discovery, certification, and settlement, and have been previously designated, by California state courts, as "Class Counsel" on at least 50 prior occasions.

d.  <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. Class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

33.    Common questions of law and fact exist, that predominate over questions that may affect individual class members. Common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, et seq.;

-12-

b.      Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, et seq.;

c.      Whether Defendant made false, deceptive and/or misleading representations in the advertising and/or packaging of the EPL Products;

d.      Whether Defendant knew or should have known that the recyclability claims and representations were false, deceptive and/or misleading;

e.      Whether Defendant represented that the EPL Products have characteristics, benefits, uses, or quantities which they do not have;

f.      Whether Defendant's representations regarding the EPL Products are false, deceptive and/or misleading;

g.      Whether the Defendant breached warranties regarding the EPL Products;

h.      Whether the Defendant committed statutory and common law fraud; and

i.      Whether Defendant's conduct as alleged herein constitutes an unfair and/or unlawful business act or practice within the meaning of Business and Professions Code section 17200, et seq.

34.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

35.    Plaintiff and the Class have suffered injury in fact, and have lost money, as a result of Defendant's misrepresentations. Plaintiff purchased the EPL products under the belief that they were packaged with recyclable materials. Plaintiff relied on Defendant's labeling, marketing and website and would not have purchased the EPL Products or paid a premium for them if he had known that they did not have the characteristics, benefits, or qualities as represented vis-à-vis the claims.

36.    The Defendant's misrepresentations regarding the Claims were material insofar as consumers relate to recyclable policies, and tend to be willing to pay a price premium for foods that employ such policies and/or practices. The Defendant is  aware of consumer preference for such products, and has implemented a strategic false advertising and marketing campaign intended to deceive consumers into thinking that the EPL employs such policies and practices.

37.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for class members to prosecute their claims individually.

38.    The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

39.    Defendant has acted on grounds generally applicable to the Class as a whole, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant.

40.    Absent a class action, Defendant is likely to retain the benefits of their wrongdoing. Because of the small size of the individual class members' claims, few, if any, class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

41.     Were if not for this class action, most class members would find the cost associated with litigating claims extremely prohibitive, which would result in no remedy.

42.     This class action would serve to preserve judicial resources, the respective parties' resources, and present fewer issues with the overall management of claims, while at the same time ensuring a consistent result as to each class member.

## FIRST CAUSE OF ACTION
### Violations of California Business & Professions Code §§17500, et seq.
### By Plaintiff and the Proposed Class against Defendants

43.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

44.     Pursuant to Cal. Bus. & Prof. Code §§ 17500, et seq., it is "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

45.     Defendant committed acts of false advertising, as defined by §17500, by making the Claims regarding the EPL products because those claims are untrue and/or misleading.

46.     Because the Defendant has been made aware of the lack of recyclability aspect to its product packaging/labeling, Defendant knew or should have known through the exercise of reasonable care, that the EPL claims were false, untrue and/or misleading to Plaintiff and the class members.

47.     Defendant's actions in violation of § 17500 were untrue and/or misleading such that the Plaintiff, the Proposed Class and the general public are and were likely to be deceived by the untrue and/or misleading statements.

48.     Plaintiff and the Proposed Class Members lost money or property as a result of Defendant's false advertising violations, because they would not have purchased, or would not have paid a premium, for the EPL products if they had not been deceived by the Claims.

**SECOND CAUSE OF ACTION**
**For Violation Cal. Bus. & Prof. Code § 17200, et seq. By Plaintiff**
**and Proposed Class against Defendants**

49.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiff is a direct victim of Defendant's illegal and/or unfair business acts and practices referenced in this complaint, has lost money as a result of such practices, and brings this action both in his individual capacity and on behalf of California citizen consumers who share a common or general interest in the damages as a result of the illegal and/or unfair practices.

51.     The approximately 100,000 member class is ascertainable via their experience as California citizens who purchased EPL products within the State of California at some point within the operative Limitations Period. Class members share a community of interest and an injury-in-fact as Defendant has violated California laws, thereby depriving class members of money earned. Based on the facts set forth above, it would be impracticable to proceed in individual actions.

52.     Plaintiff suffered an injury-in-fact pursuant to Business & Professions Code section 17204, and lost money as a result of Defendant's illegal and/or unfair practices.

53.     Plaintiff brings this action on behalf of an ascertainable class who share a community of interest pursuant to Business & Professions Code section 17203 and Code of Civil Procedure section 382 and who share a common or general interest in the damages as a result of the illegal and/or unfair practices, in that those individuals on whose behalf the action is brought have also lost money as a result of Defendant's practices, as set forth above, and that it would be impracticable to proceed as an individual plaintiff action.

54.     Business & Professions Code section 17200 *et seq*. prohibits any unlawful, unfair, or fraudulent business act or practice.

55.     Plaintiff's allegations herein are based upon Defendant's institutional business acts and practices.

56.     Defendant's acts and practices, as described herein above, are unlawful and unfair, in that they violate California law.

57.     As a direct result of Defendant's unlawful and unfair business acts and practices, Plaintiff and all other class members have been damaged in an amount to be proven. Accordingly, Plaintiff prays for restitution and injunctive damages in an amount to be proven.

58.     Plaintiff is informed and believes, and on that basis alleges, that Defendant's unlawful and unfair business practices, alleged above, are continuing in nature and are widespread.

59.     On behalf of the ascertainable class, Plaintiff respectfully requests a public injunction against Defendant to enjoin it from continuing to engage in the illegal conduct alleged herein. On behalf of the ascertainable class, Plaintiff respectfully requests restitution damages.

60.     Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays for leave of court to amend this complaint when the amounts are more fully known.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the Class;

b.     For an order certifying Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

c.    For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

d.    For an order to correct, destroy, and change all false and/or misleading labeling and website terms relating to the Claims;

e.    For an order finding in favor of Plaintiff, the Class on all counts asserted herein;

f.    For prejudgment interest on all amounts awarded;

g.    For an order of restitution, disgorgement of profits, and all other forms of equitable monetary relief;

h.    For injunctive relief as pleaded or as the Court may deem proper; and

i.    For an order awarding Plaintiff, and the Class, their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully demands a trial by jury of all issues.


Dated: October 21, 2024                **SULLIVAN & YAECKEL LAW GROUP, APC**


_____
Eric K .Yaeckel
Ryan T. Kuhn
Attorneys for Plaintiff DARKO BOGAVAC an Individual
on behalf of himself and all others similarly situated and the
general public

-18-

# Exhibit A



Exhibit B



Exhibit C



Exhibit D



# Exhibit E

# Recycling's Dirty Dozen

Get our at-a-glance guide to the Nice Nine and Dirty Dozen

The Dirty Dozen are 12 types of items that can mislead anyone trying to be a conscientious recycler. They seem recyclable, but are unwanted by recycling markets—and many contaminate the recycling process.

In fact, only certain kinds of plastic and paper are easily recyclable, and the market determines much of what can be recycled. The majority of the world's recyclables used to be sent to international markets. Those markets recently increased restrictions on imported recyclables. Now, the remaining markets for those materials have grown more competitive. They expect higher quality materials, free of contaminants.

The better we do at getting only the right types of materials to market, the easier it will be to continue selling our recyclables. The City's recycling revenue offsets costs and can help to moderate garbage rates.

Each of the Dirty Dozen has a story about why it shouldn't be placed in your recycling cart. Most of these items should go in your trash, unless an alternative is noted. Here's the scoop:

| NON-RECYCLABLE ITEMS | REASON |
|---|---|
|  Clamshells | Clamshells and similar items used to hold takeout food or produce like berries or lettuce don't melt down at the same temperature as other plastics in the recycling process. Although clamshells are made from the same PETE (#1) virgin plastic resin as soda and water bottles, they are manufactured using a "thermoform" process that gives them a more brittle, rigid form. Clamshells are also contaminated with labels attached with strong adhesives. Taken together, the labels, adhesives and thermoform characteristics make clamshells undesirable to plastics remanufacturers. |
|  Black Plastic | There is no market demand for black plastic. Why? (1) Black microwave trays, like clear clamshells, don't melt well with other plastics in recycling plants; (2) Black plastic is often contaminated by food residues; (3) Optical sorters used in many recycling plants cannot "see" black items, so they cannot be easily sorted; and (4) Because they contain black pigment, black plastics can only be made into black items. Recycling firms prefer clear plastic, which can be dyed many different colors. |

| NON-RECYCLABLE ITEMS | REASON |
|---|---|
| Plastic Wrap & Bags | There is no market for plastic bags and packaging wrappers (such as those around toilet paper or paper towels) from households because so much of the material is contaminated with moisture, food, paper receipts, etc. Plastic bags and packaging also wrap around machinery shafts and clog equipment at the SMaRT Station ®. This causes costly shutdowns while maintenance staff cut the plastic off the equipment and send it to the landfill.<br><br>**Alternative:** Some grocery stores will take plastic bags for recycling. Search How to Get Rid of Anything for locations. |
| Egg Cartons | Whether made of clear or foam plastic or molded paper, egg cartons cannot be recycled in our area. There is no market demand for clear or foam plastic cartons. Because of the risk of spreading bird flu from chicken eggs to the carton, Asian markets (beyond China) no longer accept paper cartons.<br><br>**Alternative:** If you know someone who raises chickens, give them your cartons for reuse. If you compost in your backyard, add paper egg cartons—they will break down in a well-managed pile. |
| Hot & Cold Cups | Paper cups (hot cups) for coffee or tea have a waterproof barrier that prevents them from breaking down at a paper recycling mill (see "Frozen Food Boxes"). There is little recycling market demand for plastic cups for iced tea and other cold drinks because they don't melt down well with other plastics. Likewise, the lids and straws from hot or cold cups also are not recyclable. |
| Frozen Food Boxes | Frozen food boxes can't be processed with other paper pulp at the mill because they are designed not to break down when wet. |
| Takeout Containers | Whether made from paper, plastic or foam, lack of market demand for these materials, along with contamination from food and liquids, are reasons why takeout containers should be placed directly in the garbage. Takeout cups, lids and straws also cannot be recycled.<br><br>**Alternative:** If there is food in the containers, be sure to empty it into a food scraps collection container. |
| Padded Envelopes | Padded envelopes usually have a glued lining of plastic bubbles, which makes them unsuitable for making new paper products. |



| NON-RECYCLABLE ITEMS | REASON |
|---|---|
| Food & Liquids | Empty liquids and food from recyclable containers before recycling them. Food left in containers contaminates other recyclables. Placing a liquid-filled plastic bottle in your recycling will prevent it from being recycled. Bottles are mechanically sorted from other materials by density. Plastic bottles containing liquid get sent to the glass sorting line. It causes costly delays to pull them out, empty them and place them with other plastics, so these bottles get discarded.<br><br>**Alternative:** Be sure to empty food from all containers into a food scraps collection container. |
| Foam | Items made from plastic foam, such as "styrofoam" packing peanuts, meat trays and other packaging materials, are mostly made of air. They contain so little plastic that recyclers find it's not worth the expense of hauling and processing to recycle these items. That's why there is no market for them.<br><br>Read the Sunnyvale ordinance banning foam plastic food and beverage containers<br><br>**Alternative:** Bring clean packing peanuts to your local shipping store for reuse. |
| Ceramics & Glassware | Different types of glass are made using different chemical recipes of sand, soda ash and additives. Factories in our area, while capable of recycling glass bottles and jars, cannot recycle other types of glass, such as drinking glasses, cookware, window panes and light bulbs. Ceramics are stone, not glass, and contaminate the recycling process. |
| Propane, Butane Cylinders | Even a small amount of leftover propane or butane creates a serious risk of explosion, fire and injury to waste collection and recycling workers. If the cylinders slip past quality control checkpoints at the recycling facility, they can explode when compressed in bales of metal.<br><br>**Alternative:** Bring these items to a hazardous waste event. Visit the Santa Clara County Household Hazardous Waste program to learn more. |

# Other Dirty Players and Problems

Diapers, greasy pizza boxes, household batteries, shoes and textiles are other offenders that should not go in the recycling cart. For more information on how to dispose of specific items, search How to Get Rid of Anything.

Read our Garbage and Recycling Guide

Recycling's Dirty Dozen | Sunnyvale, CA

Exhibit F

Partnerships for more sustainable packaging with El Pollo Loco

🇲🇽 **Español**

Search ...                                              🔍

DIRECT
PACK

**Expertise**        **Products**        **Green Together**        **News**

**About Us**        **Contact Us**

# Partnerships For More Sustainable Packaging With El Pollo Loco



5/7/24, 8:46 AM                    Partnerships for more sustainable packaging with El Pollo Loco



At Direct Pack, we thrive on building long-lasting partnerships with our customers to develop packaging that fits their needs. When it was time for El Pollo Loco to transition away from Styrofoam, we worked closely with our long-term partner to develop a range of packaging that was more suitable for their famous fire-grilled chicken.

Together with El Pollo Loco, we innovated a more sturdy container partially made of recycled materials. These new containers are more sturdy and keep the food hotter, improving the overall eating experience.

We are proud of what our teams have achieved together. These new containers will remove 1.9 million cubic feet of Styrofoam — the equivalent of 21 Olympic-size swimming pools — from the national

waste stream annually, and all clear El Pollo Loco lids can be recycled just like PET bottles.

## Read more about this launch in these articles:

**Eco-Friendly Thermo-To-Go Packaging**

**Eliminating Styrofoam**











Exhibit G

5/7/24, 8:48 AM                                   Recycling and Sustainability - Direct pack Inc.



DIRECT PACK          **Expertise**       **Products**       **Green Together**       **News**

**About Us**       **Contact Us**

# Recycling And Sustainability

## WE BELIEVE IN RECYCLING

Research shows that post-consumer recycled PET (rPET) is more sustainable than both compostable packaging materials and virgin PET. We have been using recycled bottles in our manufacturing since 2008, and are now actively pursuing even more recycled thermoformed PET in our products.

In the beginning of 2020, we acquired our own recycling and reclaiming facility, Direct Pack Recycling **(read more)**. With capacity to recycle 20,000 tons of PET plastic, it allows us to move closer to a full circle manufacturing process. We've built personal relationships with North American MRFs (material recovery facilities) to source bales of post-consumer recycled PET bottles and mixed PET thermoformed containers.

**Español**                                              Search ...       🔍      

Case 3:25-cv-00339-MMA-BLM    Document 1-3    Filed 02/14/25    PageID.59    Page 44 of 52

5/7/24, 8:48 AM                     Recycling and Sustainability - ♣ Direct pack Inc.



**Expertise**     **Products**     **Green Together**     **News**

**About Us**     **Contact Us**



We are already working closely with a number of customers on recovering their used PET packaging and including it (along with other thermoforms) in the production of their new containers.

As consumers are already putting these containers in the recycling bin, it's a great opportunity to close the loop and avoid using new material. Our customers' PET packaging is not garbage, but a valuable infinite resource.

**❋ Español**                              Search ...                    🔍  

5/7/24, 8:48 AM

Recycling and Sustainability - ♻ Direct pack Inc.

DIRECT PACK    **Expertise**    **Products**    **Green Together**    **News**

**About Us**    **Contact Us**



# #1 PET IS THE MOST RECYCLED PLASTIC IN THE WORLD

All kinds of #1 PET packaging can be recycled just like PET soda and water bottles. We created a video to explain the process – watch it **here**! We need your help to make sure even more PET packaging and bottles are recycled.

Please recycle your BOTTLEBOX®, as well as other PET food packaging and bottles*, so we can keep them in the loop and turn them into new products.

*Note about recycling of black containers: Unfortunately, black bases are not recognized by optical sorters in the recycling facilities, and thus not recovered. If you want to be sure you can recycle your container, please use clear or any other color than black.*

**🍁 Español**                    Search ...                    🔍    

5/7/24, 8:48 AM                    Recycling and Sustainability - ♣ Direct pack Inc.



**Expertise**      **Products**      **Green Together**      **News**

**About Us**      **Contact Us**



# LABELS

Paper labels can negatively impact the recyclability of an otherwise perfectly using wash-away BOPP labels, which easily and fully separate from the packa 100% recyclable.



🈁 **Español**                    Search ...                    🔍    

Case 3:25-cv-00339-MMA-BLM    Document 1-3    Filed 02/14/25    PageID.62    Page 47 of 52

5/7/24, 8:48 AM                          Recycling and Sustainability - ♻ Direct pack Inc.



Expertise      Products      Green Together      News

About Us      Contact Us



## NAVIGATION

**Expertise**          **Contact Us**

**Green Together**      **Social Media**

**News**               **Community Guidelines**

**About Us**

## ABOUT US

Direct Pack is a leader in sustainable, customized and innovative thermoformed packaging for all food applications.

## CONTACT US

📞 **1.626.380.2360**

✉️

**dpisales@directpackinc.com**

## SUBSCRIBE TO OUR NEWSLETTER

Be the first to know about our latest designs, customer spotlights, and key industry updates!

First Name

Last Name

Email Address

**Subscribe**

Copyright © 2024 The Direct Pack. All Rights Reserved.



Exhibit H

# <u>Storm Recovery Information</u>

 Department of Public Works

## Unacceptable Items & Contaminants

Not everything belongs in your blue bin. Tossing items like plastic bags and clothing in the bin hoping they will be recycled is called "wish-cycling". Placing these unacceptable materials in the blue bin can damage equipment at the recycling facility and pose a danger to workers. Common items to never place in the blue bin include plastic bags (left), tanglers like hoses, chains, cords, clothing and hangers (middle) and plastic shipping materials (right).



Plastic bags clog machinery at the recycling facility

5/10/24, 11:53 AM    Contaminants



"Tanglers" cause problems at the recycling facility



Though they can't be recycled in your blue bin, many of the items below can be taken to other facilities. For donation, recycling and proper disposal options, please visit **WasteFreeSD.org**.

- Bagged recyclables
  - **Only** exception is shredded paper - place in a large, clear bag and tie closed
- Plastic bags, plastic film, and plastic shipping materials
  - While these CANNOT be placed in your blue bin, they CAN be returned to retailers for recycling. Visit **PlasticFilmRecycling.org** for more info.
  - Tip! Shipping materials made of paper, like cardboard boxes (flattened), packing paper and mailing envelopes CAN be placed in your blue bin.
- "Tanglers"
  - Hoses, chains, cords, tarps, hangers and tubing
- Clothes, textiles and hangers (donate)
- Hazardous materials
  - Batteries, light bulbs, propane tanks, needles/sharps
- Electronic waste
  - Computers, keyboards, cables, phones, etc.
- Diapers and pet waste (place in the trash)
- Organics
  - Untreated wood and yard waste can be placed in your green waste bin and food waste can be composted
- Scrap metal

**Resources**

Contaminants

**Recycle Right! Newsletter**
**Recycle Right! Home Page**
**Recycling Home Page**
**Recycling Guides**
**Composting**

**Have a recycling question? Email Recycle@sdcounty.ca.gov or Call the Recycling Hotline:**

